## 17659.  BREWER v. FAIR & MARTIN.

The letters and telegrams. between the plaintiff and the defendants as to the tomatoes in question constituted a. sale and purchase.

The question whether the tomatoes were of the kind bought, merchantable or marketable, was for the jury; and the court erred in granting a nonsuit.

DECIDED DECEMBER 14, 1926.

Complaint; from Fulton superior court—Judge Humphries. July 25, 1926.

*J. Howell Green, Underwood & Haas, E. Smyth Gambrell,* for plaintiff.

*George & John L. Westmoreland,* for defendants.

LUKE, J.  Brewer sued Fair & Martin upon an open account. Fair & Martin denied indebtedness.  Brewer testified that he shipped to the defendant tomatoes for which he had not been paid, and that he had personal knowledge of the condition of the tomatoes, having handled them himself, and that they were of the grade and quality sold.  It was further in evidence that the negotiations leading up to the sale of the tomatoes for which he sued was explained in a letter to him from Fair & Martin, dated March 19, 1917, as follows:

"If you have any potatoes, tomatoes, or other vegetables to offer in carload lots, please wire us prices on receipt of this letter, as we are brokers.  You will include in your price our brokerage of

Sales, 35 Cyc. p. 83, n. 7; p. 86, n, 26; p. 234, n. 8.

5 cents per package. All cars sold by us will be shipped by you direct to the purchaser, bill of lading attached to draft. Inspection allowed. Trusting to hear from you and that we may do some business together, we are,

"Very truly yours, Fair & Martin."

He replied on March 23, 1917, in the following letter:

"Gentlemen: Your letter received, and in reply will say that I have sold out this week's shipment which rolls to-morrow at $7.50 per crate for fancy tomatoes. I will quote you for next week's shipment, which will reach destination in time for Easter trade.

| | | | | | |
|---|---|---|---|---|---|
| 144 s | Fancy tomatoes | @ | $10.00 | per | crate |
| 120 s | " | " | " 9.50 | " | " |
| 180 s | Choice | " | " 9.00 | " | " |
| 216 s | Gems | " | " 8.00 | " | " |
| | Crooked | tomatoes | 4.00 | " | " |

"Cars loaded as they come from bins, count, grade and pack guaranteed. Brokerage allowed. Orders subject to previous sales.

"Yours truly, Thos. Brewer."

On March 27, 1917, Fair & Martin wrote him as follows: "We wish to thank you for your favor of the 23rd quoting prices on tomatoes. Tomatoes are still a little too high for our trade to use. Keep us posted on your prices and as soon as there is a decline in the market, we hope to be able to do some business with you." On April 18, 1917, Fair & Martin telegraphed him as follows: "Have you car tomatoes rolling unsold. Wire contents price including brokerage." He replied by telegram as follows: "Southern car tomatoes going west rolled Saturday night hundred ninety seven fancy two sixty five hundred eighty three choice two dollars forty seven seconds one fifty car going east rolled Friday want twenty five cents crate above these prices for that four more cars going this week." He received by telegram from Fair & Martin on April 22, 1917, the following reply to his telegram and an order for the car of tomatoes sued for by telegraph, as follows: "Divert us car tomatoes shipped Saturday prices quoted confirm quick."

Fair & Martin then wrote a letter to Brewer on April 23, 1917, as follows:

"This morning upon receipt of your night letter of the 22nd

we wired you to divert us the car of tomatoes shipped Saturday at the prices quoted. We asked you to confirm. Trusting that you will divert the car to us and that this will lead to further business, we are,

"Yours very truly,

"Fair & Martin, Inc."

He telegraphed Fair & Martin as follows: "F. o. b. sale here confirm Southern twelve naught six three two passed Jacksonville today and diverted to you tomatoes packed to color in ten days inspect accordingly rolled car east today three two six fancy ninety seven choice twenty five seconds same price subject to prior sale." He followed up this telegram by sending an invoice of the car of tomatoes. He proved that the car of tomatoes was received after having been diverted in Atlanta, and that Fair & Martin were notified and went down to the car, broke the seal and examined the tomatoes and refused them. The evidence also showed that Fair & Martin had resold the car of tomatoes to other parties.

After the conclusion of the testimony the court upon motion granted a nonsuit in the following order: "I think the meaning of these telegrams are an inquiry and proposition to sell, without a definite acceptance of the final proposition on the part of the seller. The telegram dated April 18 is an inquiry as to whether the plaintiff had cars unsold in process of transportation. The answer to that telegram, dated April 22, describes cars unsold, and quotes a price, definite as to amount and definite as to quantity, but lacking as to freight or point of delivery. The answer to that telegram by the defendant, dated April 23, is a request to divert to the defendant one of the cars referred to at prices quoted, and asks for a confirmation of this request. This telegram is silent as to payment of freight also. The answer by the plaintiff to that telegram is dated April 24, and offers for sale, f. o. b. Homestead, Florida, the car referred to, directs inspection, and asks for confirmation. The defendant never answered this telegram. In that situation there was not an unconditional acceptance of the offer of the plaintiff, and when this car reached the city of Atlanta, the defendant merely went down and looked at it, he says, to determine whether he would accept it or not, and on looking at it he refused to accept it. I don't think that the telegrams in question made a contract; neither do I

think that the mere inspection of the tomatoes on request of the proposed seller would constitute an acceptance. In view of that opinion that I entertain of the evidence, I don't think there could be a recovery. Therefore I will withdraw this case from the consideration of the jury and award a nonsuit, with judgment against the plaintiff for costs." Upon the judgment of nonsuit error is assigned.

We do not agree with the learned judge in granting this motion for a nonsuit. We are of the opinion that the letters and telegrams were more than an unaccepted proposition to sell and to buy. We think that there was a sale and a purchase. The issue as to whether the tomatoes were of the kind bought, merchantable or marketable, was for the jury. The case should have been, with proper instructions from the court, submitted to the jury.

*Judgment reversed. Broyles, C. J., concurs. Bloodworth, J., absent on account of illness.*